Rockingham
No. 6612

STATE OF NEW HAMPSHIRE

v.

RICHARD SCHOFIELD

July 19, 1974

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the State of New Hampshire.

*Ernest A. Jette,* by brief and orally, for the defendant.

LAMPRON, J.  Defendant was indicted for burglary, tried by jury before *Morris,* J., and found guilty. His pretrial motion to suppress evidence taken from him, consisting of a boot, was denied and his exception reserved and transferred.

On February 10, 1972, a burglar alarm located in the Benjamin Adams home on Adams Pond Road in Derry

which was connected to the police station became activated. Police officers who answered a call from the station at 1:22 a.m. discovered upon their arrival at the Adams house that it had been the subject of a recent burglary. They observed an automobile, which they knew belonged to the defendant, parked off the Adams Pond Road about one-tenth of a mile away from the house. Two distinctive sets of boot prints led from the car to the Adams house and away from it into surrounding woods and then back to the road where they disappeared.

About 3:30 a.m., Dana Smith, whose house was almost a mile from the Adams home, summoned the police. Defendant Schofield and a companion, William Smith, had been there for some time endeavoring to reach assistance for a disabled car. When the officers arrived they first noticed William Smith who was outside in front of the house. One of them told him he was being held "for suspicion of burglary." He was frisked and put in a cruiser with an officer guarding him. As he was being placed in the car an officer noticed Smith was wearing desert boots with ripple soles which matched one set of prints at the Adams house and he took one of the boots off Smith's foot for comparison.

There were two or three cruisers and five officers at the scene. Some of the officers then entered the house, found Schofield in the kitchen, and observed that he was wearing boots of a type which matched the other set of footprints at the scene of the burglary. He was taken in custody and in the process one of his boots was seized by the officers. Both Schofield and Smith were taken to the Derry police station in separate cruisers and held there.

The State maintains that the officers had probable cause to make a warrantless arrest of defendant Schofield, as well as of his companion Smith, that he was arrested at the Smith home, and that his boot was seized in a search incident to his lawful arrest.

RSA 594:10 (b) (2) provides that an arrest without a warrant can be made if the officer has reasonable ground to believe that the person arrested has committed a felony. "The terms 'reasonable ground' and 'probable cause' in

this area of the law mean substantially the same thing . . . . Probable cause has been defined as follows: where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed." *State v. Hutton,* 108 N.H. 279, 287, 235 A.2d 117, 122 (1967). The record amply supports that a felony (RSA ch. 583-A, now RSA ch. 635) had been committed at the Adams house and that the investigating officers present at the Smith home where the defendants were found had probable cause to believe that defendant Schofield and his companion were its perpetrators.

RSA 594:1 (Supp. 1973) defines an arrest as "the taking of a person into custody in order that he may be forthcoming to answer for the commission of a crime." "To constitute an arrest there must exist an intent on the part of the arresting officer to take the person into custody and a corresponding understanding by the person arrested that he is in custody." *State v. Hutton,* 108 N.H. at 285, 235 A.2d at 121. "[N]o magic words or the filing of specific charges were required." *State v. Garceau,* 108 N.H. 209, 211, 231 A.2d 625, 627 (1967). "Whether or not an arrest takes place depends upon 'the context of the circumstances'." *State v. Hutton supra.* There was evidence that, on arriving· at the Smith house, the officers first encountered defendant's companion Smith, placed him under arrest, and put him in a police cruiser with an officer guarding him. There was further evidence that Officer Quinlan then entered the house and found Schofield on the floor with two officers standing over him. Quinlan ordered the officers to hold him "for suspicion of burglary" and to take him into custody, which was done. We hold that these actions manifested an intent on the part of the police to take the defendant into custody and created an understanding by the defendant that he was in their custody, which constituted a valid arrest.

It is well established that a warrantless search incident to a valid arrest and substantially contemporaneous therewith is a reasonable intrusion and does not violate the

fourth or fourteenth amendments to the Federal Constitution or part I, article 19th of the New Hampshire constitution. *United States v. Robinson,* 414 U.S. 218, 235 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 457 (1971); *see State v. Laro,* 106 N.H. 500, 503, 213 A.2d 909, 911 (1965). Under such a search it is permissible to seize a purely evidentiary object such as defendant's boot taken in the process of his arrest in this case. *United States v. Robinson supra.* Having been obtained in a lawful search incident to a valid arrest, the boot was admissible in evidence and defendant's motion to suppress was properly denied.

*Exception overruled.*

All concurred.