Belknap
No. 81-422

### THE STATE OF NEW HAMPSHIRE

v.

### DWIGHT T. REYNOLDS

December 30, 1982

*Gregory H. Smith*, attorney general (*Richard C. Nelson*, assistant attorney general, on the brief, and *Brian T. Tucker*, assistant attorney general, orally), for the State.

*James E. Duggan*, appellate defender, of Concord, on the brief and orally, for the defendant.

BATCHELDER, J.   Dwight T. Reynolds appeals his conviction of burglary, RSA 635:1, I, on the basis that the Trial Court (*Cann*, J.) erred when it denied his motion to suppress evidence obtained from his allegedly illegal arrest. The only issue before us on appeal is whether there was probable cause to arrest the defendant. For the reasons which follow, we reverse and remand for retrial in light of this opinion.

On July 28, 1980, Dwight T. Reynolds was hitchhiking on Route 3 in Tilton, toward Franklin and away from Belmont. At approximately 4:20 a.m., Officer Beadle, a Tilton policeman on routine patrol, observed the defendant. At that time, the officer neither stopped the defendant nor made any contact with him. Shortly after observing the defendant, the officer responded to a call to investigate what was reported as vandalism at a gas station in the neighboring town of Belmont.

On his way to Belmont, the officer once again observed the defendant and on this occasion stopped and inquired of the defendant his name and address. This occurred about thirty to forty minutes after he first observed the defendant. The officer testified at the suppression hearing that there was enough light at this time to determine that the defendant was wearing "Jox brand sneakers." The officer continued to the gas station in Belmont where he discovered there had been a burglary rather than just damage from vandalism. After viewing the evidence of the burglary, the officer returned westerly on Route 3 in order to locate the defendant. Upon finding him, the officer asked Reynolds his age, and again observed his apparel, including his footwear.

The officer then returned to the gas station where he inspected the money bags lying on the floor. On one of the money bags, he noticed a sneaker print which he thought appeared to have been made by a Jox brand sneaker. The officer's knowledge of athletic footgear had been gleaned from personal experience as a runner. The officer immediately returned to locate the defendant on Route 3. During this encounter, the officer asked the defendant to permit him to look at the sneakers, explaining that he did not have to comply with the request. The defendant showed the officer the bottom of the sneakers which Beadle observed to be "just like" the print on the

money bag at the scene. At this point, the defendant was arrested for the burglary of the gas station.

The defendant was later indicted for burglary. Prior to trial, the defendant filed a motion to suppress the evidence allegedly obtained as a result of his illegal arrest, which was denied by the presiding judge. Specifically, the defendant sought to exclude from evidence the sneakers he was wearing at the time of the arrest and evidence derived from them. At the trial which followed, one of the defendant's sneakers was introduced into evidence, and a criminologist testified that he had examined the sneaker and the imprint on the money bag and concluded the sneaker had made the imprint. The jury found the defendant guilty.

■■ RSA 594:10, II(b) provides that an arrest without a warrant is lawful when a peace officer "has reasonable ground to believe that the person arrested has committed a felony." Reasonable ground and probable cause are synonymous. *State v. Hutton*, 108 N.H. 279, 287, 235 A.2d 117, 122 (1967). Probable cause for arrest has been found to exist where the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, would warrant a person of reasonable caution in the belief that the person to be arrested had committed or was committing a crime. *Brinegar v. United States*, 338 U.S. 160, 176–77 (1949); *see State v. Birmingham*, 122 N.H. 1169, 1171, 453 A.2d 1329, 1331 (1982); *State v. Lemire*, 121 N.H. 1, 4–5, 424 A.2d 1135, 1138 (1981).

■ In determining probable cause to arrest, we are dealing with only reasonable probabilities; probable cause does not require proof beyond a reasonable doubt. *Brinegar v. United States*, 338 U.S. at 175–76; *cf. State v. Fogg*, 410 A.2d 548, 550 (Me. 1980) (State has the burden of proving by fair preponderance of the evidence that probable cause existed justifying warrantless arrest).

Other cases which discuss the relationship of footprint evidence to probable cause for arrest indicate that more than the single identifying characteristic of the footprint was required to support probable cause. In *State v. Schofield*, 114 N.H. 454, 322 A.2d 603 (1974), there were footprints leading from the defendant's car to the scene of the crime and from there into the woods. The defendant was apprehended within one mile of the crime scene and less than two hours after a burglar alarm had been activated. The court held these facts collectively constituted probable cause for arrest. *Id.* at 455–56, 322 A.2d at 603–04. The United States Supreme Court held probable cause existed in *United States v. Cortez*, 449 U.S. 411 (1981), where footprints with a distinctive marking appeared on

clear nights in a remote desert area of Arizona heavily trafficked by illegal aliens, and law enforcement officers had observed the defendant's truck driving in this same remote area at the time and in the manner they expected illegal aliens to be transported, and when stopped, the defendant was wearing shoes that were like the type which made the prints in the desert. *Id.* at 421–22. In *State v. Fogg*, 410 A.2d at 550, the Maine Supreme Court found that distinctive footprints in snow leading from the crime scene across a parking lot to a hotel where defendant was staying under an assumed name, and the fact that the same distinctive prints led to defendant's vehicle, constituted probable cause for arrest.

The court has this day found probable cause to arrest where footprints consistent with the defendant's type of boots led from a burglarized residence to the perspiring defendant, who had been tramping through the snow for a considerable distance. The defendant also fit the general description of one of two young males seen fleeing the residence. *State v. Birmingham*, 122 N.H. at 1172, 453 A.2d at 1331.

■■ The facts of the instant case are clearly distinguishable from the cases cited. Here, there was merely one non-distinctive footprint found at the scene of the crime and that print was made by a popular brand of running shoe. This was the only link to the defendant, who was several miles away from the burglary scene. Furthermore, there was no evidence that the defendant was fleeing or acting in a "suspicious" manner. We find these facts insufficient to support probable cause for arrest. Travelers along public ways may not be stopped and searched at a peace officer's whim or mere suspicion. *Brinegar v. United States*, 338 U.S. at 177. Accordingly, we find that the challenged evidence should have been suppressed because there was insufficient evidentiary nexus linking the defendant with the burglary and the arrest was therefore unlawful. *See State v. White*, 119 N.H. 567, 570–71, 406 A.2d 291, 293 (1979).

*Reversed and remanded.*

All concurred.