Belknap,
No. 5545.

## STATE *v.* JOHN PAUL GARCEAU.

Argued June 6, 1967.
Decided July 18, 1967.

*George S. Pappagianis*, Attorney General and *Robert W. Ritchie*, attorney ( *Mr. Ritchie* orally ), for the State.

*Alfred Catalfo, Jr.* ( by brief and orally ), for the defendant.

GRIMES, J. The defendant's contentions are that the Trial Court erred in not suppressing certain evidence obtained from a search

of his person, in not granting a continuance during the course of the trial so defendant could change counsel, and in admitting and excluding evidence. We uphold the Trial Court and confirm the conviction.

According to the testimony of Janice Smith, who was a State's witness, she, one Free, and Garceau had been engaged in the systematic passing of bad checks over a wide area including parts of Vermont, Massachusetts and New Hampshire, from July 25 to August 14 when they were apprehended. Garceau was necessary to the operation because of the three only he had a license to drive. The plan followed in each case was to open a small checking account in a local bank to obtain blank checks which Free would make out and Janice Smith would cash. The money was to be split equally three ways. This charge relating to money obtained from Horn is one of several against Garceau which also includes one relating to money obtained from one Sanborn.

Defendant's first contention is that money in the amount of $143.30 seized from the defendant's person at the Laconia police station was erroneously admitted in evidence because obtained in violation of the defendant's Fourth Amendment rights under the Constitution of the United States. The Trial Court heard evidence on this issue on a motion to suppress before the State's opening statement and also during the course of the trial.

This evidence shows that the police had received complaints that some persons had passed bad checks at Sanborn's Market and the Lakeport Drug Store and were given a description of the motor vehicle being used by them. Officer Simoneau was dispatched by cruiser to Lakeport where he found another officer and Mr. Sanborn with the defendant, Janice Smith and Free. The defendant was admittedly drunk in the driver's seat of a vehicle which fitted the description Simoneau had been given. When Simoneau approached, Free ran but was apprehended and returned to the scene. All three were taken to the police station where defendant was questioned and subjected to the search which produced the money.

The defendant contends that the money was illegally seized because he was illegally searched in connection with motor vehicle offenses which were later nol prossed.

Officer Simoneau testified that defendant was arrested in connection with the bad check complaints. The Trial Court was entitled to believe the officer's testimony. The arrest took place

when defendant was taken into custody and no magic words or the filing of specific charges were required. *Henry* v. *United States*, 361 U.S. 98; 6 C.J.S., Arrest, *s.* 1 ( b ); 5 Am. Jur. 2d Arrest, *s.* 1. The information given by Mr. Sanborn, a local shopkeeper and obviously a reliable informant, the presence of defendant behind the wheel of a motor vehicle answering the description given the police, and the presence of Mr. Sanborn at the scene gave Simoneau probable cause to arrest the defendant in connection with crimes involving the passing of a bad check to Mr. Sanborn. The search was findably made incident to this valid arrest. The Sanborn and Horn incidents were just two of a long series of which there was evidence, and the possession of a relatively large sum of money by the defendant, who on the evidence could be found not to have worked for several weeks, was relevant as to his participation in and knowledge of the whole scheme. It was properly admitted. Since the evidence was properly admitted, we fail to see how the defendant was prejudiced, as he contends, by the oblique reference made in the presence of the jury by the Trial Judge to the hearing on the motion to suppress this evidence.

Defendant further contends that he should have a new trial because on the morning of the second day of the trial, the Presiding Justice denied him a continuance or a mistrial so he could change counsel. It appears that he had engaged one lawyer who after investigation advised him to plead guilty, and that he discharged him and engaged another who later disqualified himself because of a conflict of interest and turned the case over to the lawyer who was engaged in the trial. Several days before the trial, the defendant conferred with this lawyer who took a lengthy statement from him, consulted with prior counsel and also advised him that it was probable he would be found guilty and suggested a plea of guilty. Defendant's contention at the trial was that this advice indicated a lack of interest in his case and that counsel was not conducting the defense to his satisfaction and had not made sufficient preparation. He had talked with another attorney who was then engaged in trial in another county and would be so engaged for at least another day.

Several days prior to trial the defendant had accepted counsel who represented him at the trial. He had no right, constitutional or otherwise, to a mistrial or a continuance under the circumstances of this case. 23 C.J.S., Criminal Law, *s.* 979 ( 7 ); *State*

v. *Lee*, 78 R. I. 46. The Trial Court had observed the manner in which trial counsel had conducted the defense, found him competent and that he had been doing a competent job in representing the defendant. Our review of the entire transcript shows the record supports these conclusions. *State* v. *Chance*, 105 N. H. 178. We find no abuse of discretion in the denial of defendant's request.

It was not error for the Court to admit evidence of the activities of Smith, Free and the defendant involving the passing of checks to persons other than Horn even though it showed the commission of other crimes. The incidents were all part of a plan or design and the evidence was competent to show the method of operation, plan and intent. *State* v. *Story*, 97 N. H. 141; *State* v. *Desilets*, 96 N. H. 245; *State* v. *Skaff*, 94 N. H. 402; *State* v. *Palmer*, 65 N. H. 216.

We have examined all the other rulings of the Trial Court and find no error therein.

*Exceptions overruled.*

All concurred.