Rockingham
No. 79-330

### THE STATE OF NEW HAMPSHIRE

v.

### MAURICE B. LEMIRE

January 21, 1981

*James E. Duggan*, of Concord, by brief for the defendant.

*Gregory H. Smith*, acting attorney general (*Betsy S. Westgate*, attorney, on the brief), by brief for the State.

KING, J. The defendant, Maurice B. Lemire, appeals his convictions for burglary and theft of a gun on the ground that some of the evidence introduced at his trial was obtained as the result of an unlawful arrest. We hold that the Londonderry police lawfully arrested the defendant and that the evidence obtained in connection with that arrest was properly admitted at trial.

At approximately three o'clock in the afternoon of March 20, 1979, Sergeant Lynch of the Londonderry police observed three men driving a blue Chevrolet with a black top around the Village Deli in Londonderry. Sergeant Lynch recognized two of the men as the defendant and the defendant's juvenile brother. He did not recognize the third man, whom he later identified as Daniel McQuarrie, but he noted that McQuarrie wore a bandanna. Continuing to watch the vehicle, he observed the defendant holding up a gold bracelet, approximately three inches wide, as the other men admired the bracelet.

Shortly thereafter, Sergeant Lynch responded to a call to assist Corporal Alden of the Londonderry police at the scene of a burglary at the Kerr residence in Londonderry. Mrs. Kerr informed him that liquor, guns, and several items of jewelry had been stolen. He also learned from Mrs. Kerr's neighbor that two men, fitting the description of two of the men he had observed at the Village Deli, had been to her door earlier. She reported that they had been looking for her son and had been picked up by a third man driving a blue car with a black top.

Sergeant Lynch then drove to the Lemire residence where he observed the blue Chevrolet with a black top. He notified his lieutenant of his activities and requested him to secure a search

warrant for that vehicle. Before the warrant arrived, however, the defendant and the juvenile drove off in the Chevrolet. Sergeant Lynch followed the vehicle a short distance, stopped it, and ordered the two men out of the vehicle. At this point, Lynch informed the two men of their *Miranda* rights and conducted a pat-down search for weapons.

David Rist, a juvenile officer who was present, took the juvenile into custody. Sergeant Lynch drove the defendant to the station for further questioning. Before arriving at the station, he received a radio message from Corporal Alden informing him that jewelry, similar to that reported stolen from the Kerr residence, had been found in the glove compartment of the blue Chevrolet. The defendant was then formally told that he was under arrest and placed in handcuffs.

At the station, the police conducted a more extensive search of the defendant and took from him several items of jewelry, including a gold locket, which was identified as having been stolen from the Kerr residence. Additional items of the stolen property were recovered from the interior of the Chevrolet.

The State indicted the defendant for burglary and for the theft of a gun. The Superior Court (*Bean*, J.) admitted both the locket and Daniel McQuarrie's testimony that he participated in the burglary with the defendant as evidence at trial. The jury convicted the defendant of both offenses.

Following the recommendation of the State, the court sentenced the defendant to the State prison for not more than seven nor less than three-and-a-half years on the burglary charge. This sentence was to run consecutive to any period of incarceration resulting from the defendant's parole violation. On the theft of a gun conviction, the court continued the case for sentence.

The defendant appeals to this court on two grounds: first, that his arrest was illegal and therefore the fruits of that arrest should have been suppressed as evidence; and second, that his sentence on the burglary charge commenced on the day imposed, and the trial court could not make it consecutive to any sentence imposed as a result of parole violation.

On October 15, 1980, pending a decision in this court, the superior court heard the defendant's pro se motion to reduce sentence. The court amended its previous sentence, ordering that the sentence imposed run concurrent with any period of incarceration resulting from parole violation. By motion of October 21, 1980, the defendant, through counsel, moved to withdraw, as moot, the appeal of the issue of the statutory authority of the superior court

to make a sentence consecutive to any period of incarceration resulting from a parole violation. The motion to withdraw this issue on appeal is granted.

The defendant argues that he was under arrest at the time that he entered Sergeant Lynch's car and that because the police lacked probable cause to arrest him at that time, the evidence obtained pursuant to that arrest should have been excluded at trial. The State denies this contention and argues that the defendant consented to accompany Sergeant Lynch to the police station. According to the State's theory, the defendant was not arrested until Sergeant Lynch received the radio message from Corporal Alden and placed handcuffs on the defendant. Alternatively, the State argues that the police had probable cause to arrest the defendant, either for burglary or for receiving stolen property, at the time the defendant entered Sergeant Lynch's automobile.

Sergeant Lynch could lawfully transport the defendant to the police station for questioning on two grounds. First, the defendant could consent to accompany him to the police station, in which case there would be no seizure within the meaning of the fourth amendment. *See United States v. Mendenhall*, 100 S. Ct. 1870, 1877 (1980); *State v. White*, 119 N.H. 567, 572, 406 A.2d 291, 294 (1979). Second, Sergeant Lynch could have had probable cause to arrest the defendant. *See State v. Hutton*, 108 N.H. 279, 287–88, 235 A.2d 117, 122–23 (1967).

For an arrest to occur, "there must exist 'an intent on the part of the arresting officer to take the person into custody and a corresponding understanding by the person arrested that he is in custody.' " *State v. Rocheleau*, 117 N.H. 792, 793, 378 A.2d 1381, 1383 (1977), *quoting State v. Wolfson*, 116 N.H. 227, 229, 356 A.2d 692, 694 (1976). Whether this has occurred depends upon the circumstances of each case. *State v. Brodhead*, 116 N.H. 39, 40, 351 A.2d 57, 58 (1976). There is no need for an officer to utter the magic words "You're under arrest." *See id.*, 351 A.2d at 58.

As the Supreme Court has stated, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Draper v. United States*, 358 U.S. 307, 313 (1959), *quoting Brinegar v. United States*, 338 U.S. 160, 175 (1949). Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to

warrant a man of reasonable caution and prudence in the belief that the defendant is committing or has committed a crime. *See Michigan v. DeFellippo*, 443 U.S. 31, 37 (1979); *Draper v. United States, supra* at 313; *Carroll v. United States*, 267 U.S. 132, 162 (1925); *State v. Hutton*, 108 N.H. 279, 287, 235 A.2d 117, 122 (1967).

■ The information known to Sergeant Lynch at the time of the stop was sufficient to warrant the belief that the defendant had committed a crime. Sergeant Lynch had observed three men in a blue and black Chevrolet passing around a gold bracelet. Later that same day, he learned that a local residence had been burglarized and several items of jewelry stolen. During his investigation of the burglary, he learned that two men resembling two of the three men he had observed earlier had been seen in the neighborhood at the approximate time of the burglary and had been picked up by a third man driving a blue and black automobile. Based upon this information, Sergeant Lynch could reasonably have concluded that the defendant had committed burglary, and therefore he had probable cause to arrest the defendant. *See State v. Hutton, supra* at 287–88, 235 A.2d at 122–23. Because we conclude that Lynch had probable cause to arrest the defendant at the time the defendant entered the automobile, it is unnecessary to consider whether the defendant consented to accompany Sergeant Lynch to the police station.

The defendant further contends that his arrest was unlawful because Sergeant Lynch arrested him for a misdemeanor committed outside his presence without a warrant. RSA 594:10, :11. Specifically, the defendant argues that he was arrested for receiving stolen property and that because Sergeant Lynch had no reason to believe that the bracelet was worth more than $500, the arrest was for a misdemeanor only. *See* RSA 637:11 III (Supp. 1979). We disagree.

To begin with, it is not clear that Sergeant Lynch arrested the defendant for receiving stolen property. The record indicates that when Sergeant Lynch stopped the defendant, he was doing so in order to question him about his possible involvement in the burglary. Sergeant Lynch testified that even though he placed the defendant in handcuffs with a charge of receiving stolen property in mind, he was still intent on questioning the defendant about his role in the Kerr burglary. Probable cause for arrest for burglary existed.

■ Even if the defendant was arrested solely for receiving

stolen property, the arrest was lawful. That Sergeant Lynch did not know the exact value of the jewelry, and that it would exceed $500, did not make the arrest one for a misdemeanor only. Sergeant Lynch had reason to believe that the gold bracelet he had seen the defendant holding was taken from the Kerr home. Because other items of jewelry, liquor and a gun were also stolen, Sergeant Lynch had reason to believe that the defendant was in possession of other stolen property and that the value of the stolen property in the defendant's possession would reasonably exceed $500.

█ The defendant's arrest being lawful, whether for burglary or receiving stolen property, the fruits of that arrest—the gold locket, the other items discovered during the search of the defendant at the police station, and his testimony concerning these items—were all properly admitted at the defendant's trial. *Henry v. United States*, 361 U.S. 98, 102 (1959); *see Adams v. Williams*, 407 U.S. 143, 149 (1972); *Marron v. United States*, 275 U.S. 192, 198–99 (1927). Accordingly, the defendant's conviction is affirmed.

*Affirmed.*

All concurred.